IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHRISTINE ANN OLSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:11-cv-00072-MJR-PMF |
| | ) | |
| MADISON COUNTY SHERIFF ROBERT HERTZ, | ) | |
| MADISON COUNTY DETECTIVE BRAD WELLS, | ) | |
| MADISON COUNTY DEPUTY BRAVE, | ) | |
| STATE OF ILLINOIS BUREAU OF IDENTIFICATION, | ) | |
| FBI'S NATIONAL CRIMINAL INFORMATION CENTER, | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| FBI AGENT JAMES WATSON, and | ) | |
| FBI AGENT JOHN DOE2 PAPPAS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

On January 26, 2011, Christine Olson filed a pro se complaint pursuant to 42 U.S.C. § 1983 and an array of other federal statutes, against multiple state and federal law enforcement officials and entities (Doc. 1). At this juncture, the Fourth Amended Complaint (Doc. 123) controls. Defendants Agent Pappas, Sheriff Hertz, Major Wells, Deputy Brave, Agent Watson, the Illinois Bureau of Identification, the FBI National Criminal Information Center (NCIC), and the Federal Bureau of Investigation (FBI), who are the only defendants remaining at this juncture, are before the Court seeking to dismiss all claims against all defendants (Docs. 130, 134, 150). Plaintiff Olson opposes dismissal (Docs. 153, 154, 155).

1

1.   <u>Summary of Claims</u>

In essence, Plaintiff Olson contends that Defendants have her confused with convicted felon(s) "Christie A. Olson" and "Christine R. McLaughlin," as well as "Christine E. Novak" and/or "Christene Novak.  According to Plaintiff, Defendants have conspired to spread this false criminal history (including drug trafficking, burglary, theft, DUI, "hit and run", and child abuse) and allegations of mental illness to local, state and federal law enforcement agencies and others, and to otherwise harass and intimidate her, obstruct justice and violate her civil rights.  Olson states that the conspiracy all began in August 1998, but due to Defendants' efforts to cover up their conspiracy, until September 2009 she thought she was merely the victim of identity theft (Doc. 123, pp. 4, 6).  Based on these allegations, Plaintiff asserts the following claims[1]:

<u>Counts I, IV, VI, IX and XI</u>

Pursuant to 42 U.S.C. § 1983, Plaintiff Olson alleges that Sheriff Hertz, Major Wells and Deputy Brave, all of the Madison County, Illinois, Sheriff's Department, and FBI Agents Watson and Pappas, individually and in conspiracy, through their action and inaction, violated her rights under the First, Fifth and Fourteenth Amendments, denied her "life, liberty and happiness,"[2] caused her to "answer for infamous crimes" and obstructed justice; more specifically:

A.   Hertz, Wells and Watson retaliated against Olson after she exercised her First Amendment right to seek redress of identity theft, and after she identified a possible suspect in the murder of Angie

---

[1] The Fourth Amended Complaint contains 12 separate counts, numbered I-VI and VIII-XIII (there is no Count VII).  Many claims overlap and/or are redundant. Because all claims are premised upon the same facts, the Court has combined claims, while still referencing Plaintiff's numbering scheme.

[2] Life, liberty and happiness are referenced in the Declaration of Independence, not the Constitution.  The Fifth and Fourteenth Amendments to the United States Constitution refer to "life, liberty and property."

Housman[3], causing Olson to be treated differently than other citizens who reported information relative to criminal activity; and

B.  FBI Agent Watson (along with Agent James Edwards, who has been dismissed) directed other FBI agents to take no action to help Olson, and further directed them not to meet with her when she appeared at the Fairview Heights, Illinois, FBI Office.

### Counts II, VI and XI

Pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiff Olson alleges that Sheriff Hertz, Major Wells and Deputy Brave, all of the Madison County, Illinois, Sheriff's Department, and FBI Agents Watson and Pappas, all conspired with the FBI, NCIC, the Illinois Bureau of Identification, and others, using false information to obstruct justice and harass and intimidate Olson, in violation of her rights under the United States constitution and the constitution of the State of Illinois.

### Counts III, V, VIII and XII

Defendants Hertz, Brave, Wells, Watson and Pappas, along with the FBI, NCIC and Illinois Bureau of Identification, joined in a Racketeer Influenced and Corrupt Organization (RICO) Act conspiracy under 18 U.S.C. §§ 1962(d), 19164(c), by retaliating against Olson in violation of 18 U.S.C. § 1513(e) and (f), and by committing fraud in violation of 18 U.S.C. § 1028.

### Count X

The FBI, NCIC and Illinois Bureau of Identification, as well as Watson, Wells, Hertz and Pappas, shared incorrect information about Plaintiff's criminal history, causing her to answer for infamous crimes in violation of her rights under the Fifth Amendment.

### Count XIII

Defendants Sheriff Hertz, Major Wells and Deputy Brave violated the Illinois constitution when they conspired to prevent plaintiff Olson from

---

[3] In 1993, a St. Louis area 9-year-old, Angie Housman, disappeared; her murder remains unsolved. See www.apnewsarchive.com//1994/Another-attempted-Child-Abduction-Reported-in-St-Louis-County/id-91b703686d08441b54ee60d76d491a17

"obtaining justice by law" when they propagated false reports about Olson's criminal history and mental illness, and by refusing to speak with her.

2.  Analysis

The federal defendants, FBI Agent James Watson, FBI Agent "John Doe2" Pappas, the FBI and NCIC, jointly move for dismissal (Doc. 130).  The state defendants, Sheriff Hertz, Major Wells and Deputy Brave, all employees of the Madison County Sheriff's Department, also jointly move for dismissal (Doc. 150).  Lastly, the Illinois Bureau of Identification, a part of the Illinois State Police Department, moves for dismissal (Doc. 134). The motions will be considered together, as the arguments are in great part duplicative and/or interwoven.

The pertinent legal principles will be set forth as necessary, but Federal Rules of Civil Procedure 8 and 12(b)(6) provide an overarching framework for analysis.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009).  Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim.  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a

4

cause of action or conclusory legal statements." *Id*.  At the same time, however, the factual allegations of a pro se complaint are to be liberally construed, even if a savvy judge may think actual proof of those facts is improbable.  *See Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

In ruling on a Rule 12(b)(6) motion to dismiss, a plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' " and "if they do not, the plaintiff pleads itself out of court." *E.E. O.C. v. Concentra Health Services, Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting in part *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)); *see also Ashcroft v. Iqbal,* 556 U.S. 662 (2009)).  In either situation, the Court treats all well-pleaded allegations as true, and draws all reasonable factual inferences in Plaintiffs' favor.  *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir. 2004) (regarding Rule 12(b)(1)); *Justice v. Town of Cicero,* 577 F.3d 768, 771 (7th Cir. 2009) (regarding Rule 12(b)(6)).

A.  <u>FBI Agent James Pappas</u>

Federal Rule of Civil Procedure 4(m) prescribes 120 days within which to effect service of summons and the complaint.  Defendant Pappas, was named in the original complaint (Doc. 1).  Because Pappas is sued in both his individual and official capacities, Olson must serve *both* the United States *and* Pappas. Fed.R.Civ.P. 4(i)(3).  Neither actual notice nor substantial compliance with Rule 4(i) is sufficient.  *McMasters v. United States*, 260 F.3d 814, 817 (7th Cir. 2001).  However, Federal Rule of Civil Procedure 4(i)(4) states that the Court must allow a party reasonable time to cure: (A) failure to serve an employee sued in his official capacity, if the U.S. Attorney or Attorney General has been served; and (B) failure to serve the United States if an employee sued individually has been served.

5

On September 29, 2011, Plaintiff was denied pauper status, commencing the 120-day period for service. *See Donald v. Cook County Sheriff's Department*, 95 F.3d 548, 557 n. 5 (7th Cir. 1996); *Paulk v. Department of the Air Force*, 830 F.2d 79, 83 (7th Cir. 1987); *see also* Fed.R.Civ.P. 4(m).  In July 2012, Olson was granted additional time to serve Pappas (Doc. 71). On September 11, 2012, the service deadline was further extended to October 12, 2012 (Doc. 136).  By Plaintiff's own admission, she has yet to properly serve Pappas (Doc. 155, p. 5).  The federal defendants assert that there is no agent named "Jim Pappas" (Doc. 130, p. 2 n. 1).

Olson's pro se status does not excuse her failure to comply with the procedural requirements of service.  *McMasters*,260 F.3d at 818 (citing *McNeil v. United States,* 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.") (footnote omitted)).  "Although this may seem overly formalistic, '[t]he Supreme Court insists that federal judges carry out the rules of procedure, whether or not those rules strike the judges as optimal.' " *McMasters,* 260 F.3d at 818 (quoting *Tuke v. United States*, 76 F.3d 155, 157 (7th Cir. 1996)).

Olson has failed to properly effect service upon Pappas, despite two extensions of time to conduct discovery and cure the problem.  Therefore, Defendant Agent "John Doe 2" Pappas is hereby **DISMISSED**.

B.  Section 1983 Claims: Counts I, IV, VI, IX and XI

Under 42 U.S.C. § 1983, a person who acts under color of state law is liable if he or she subjects (or causes to be subjected) a United States citizen to the deprivation of any privileges, rights, or immunities secured by the Constitution and law.  Section 1983 "is not itself a font for substantive rights; instead it acts as an instrument for vindicating federal rights conferred elsewhere." *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997).  A plaintiff must

show a deprivation of a federal right by a person acting under color of state law. *Luyon v. GTE, Inc.*, 107 F.3d 873 (7th Cir. 1997). In bringing a conspiracy claim under 42 U.S.C. § 1983, a cause of action arises only when there is an actual denial of a civil right. *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982).

Plaintiff Olson alleges that Sheriff Hertz, Major Wells and Deputy Brave, all of the Madison County, Illinois, Sheriff's Department, and FBI Agents Watson and Pappas, individually and in conspiracy, through their action and inaction, violated her rights under the First, Fifth and Fourteenth Amendments.

Section 1983 specifically pertains to the actions of state actors—"[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia . . . ."  42 U.S.C. § 1983.  Therefore, FBI Agent Watson must be **DISMISSED with prejudice** from Counts I, IV, VI (insofar as it is construed as a Section 1983 claim regarding obstruction of justice), IX and XI.

The Fourth Amended Complaint offers only bald accusations and conclusory statements relative to the three remaining defendants, Hertz, Wells and Brave (*see* Doc. 123, pp. 3-7).  The complaint alleges that "the Defendants maliciously used" criminal history, civil litigation history and mental health information about others to intimidate Olson and violate her civil rights (Doc. 123, p. 4 ¶ 17).  A conspiracy is alleged, but Olson does not offer any factual allegations from which such a claim could be reasonably inferred.  (Doc. 123, p. 4 ¶ 18).  Olson makes a wild, incomprehensible leap from the fact that she gave Deputy Brave the criminal record of Christine R. McLaughlin (thereby alerting all Madison County defendants of the discrepancy), to her allegations (*see* Doc. 155, pp. 6-7).

Olson has failed to meet the Rule 8 and *Twombly* pleading standards. As pleaded, her claims are too sketchy and implausible.  Therefore, Olson's claims brought against the "state" defendants under the auspices of Section 1983, Counts I, IV, VI, IX and XI, must be **DISMISSED**.

C.  *Bivens* Claims: Counts II, VI and XI

A claim brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), is the equivalent of an action brought pursuant to 42 U.S.C. § 1983, albeit against federal actors; the same legal principles have been held to apply in both instances. *See Green v. Carlson,* 581 F.2d 669, 673 (7th Cir. 1978); *Paton v. La Prade,* 524 F.2d 862, 871 (3rd Cir. 1975). Thus, in order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Lojuk v. Quandt,* 706 F.2d 1456, 1468 (7th Cir. 1983).

Defendants Hertz, Wells and Brave, as state actors, are **DISMISSED with prejudice**, leaving only FBI Agent Watson to answer the *Bivens* claims.

For the same reasons Plaintiff Olson's Section 1983 claims were dismissed, her *Bivens* claims must be dismissed.  Olson has failed to meet the Rule 8 and *Twombly* pleading standards. As pleaded, her claims are too sketchy and implausible.  Therefore, Olson's claims brought against the "federal" defendants under the auspices of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics* , Counts I, IV, VI, IX and XI, must be **DISMISSED**.

D.  RICO Claims: Counts III,V, VIII and XII

Counts III, V, VIII and XII are interrelated claims, more aptly pleaded as a single claim against all named defendants under the Racketeer Influenced and Corrupt Organization

(RICO) Act, 18 U.S.C. §§ 1962(d) and 19164(c).  More specifically, it is alleged that Defendants Hertz, Brave, Wells, Watson and Pappas, along with the defendant agencies, conspired to, (1) retaliate against Olson in violation of 18 U.S.C. § 1513(e) and (f), and (2) by committing fraud in violation of 18 U.S.C. § 1028.

As a general matter, to state a claim for a RICO violation, a plaintiff must allege a cognizable injury to its business or property resulting from the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985); *Gamboa v. Velez,* 457 F.3d 703, 705 (7th Cir. 2006).

A "pattern of racketeering activity" consists of two or more predicate acts within a ten-year period. *See* 18 U.S.C. § 1961(5). "Racketeering activity" is defined as any act indictable under 18 U.S.C. §§ 1513 and 1028 (the two statutes cited by Olson), among other crimes. 18 U.S.C. § 1961(1)(B).  The predicate acts must be "related" and "amount to or pose a threat of continued criminal activity," *H.J., Inc. v. Northwestern Bell Telephone. Co.,* 492 U.S. 229, 239 (1989).  Furthermore, the time, place and content of the allegedly fraudulent communications must be specified.  *See* Fed.R.Civ.P. 9(b); *Goren,* 156 F.3d at 726.

To satisfy the "enterprise" element of Section 1962(c), a plaintiff must adequately allege an enterprise, which is "more than a group of people who get together to commit a pattern of racketeering activity." *Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 645 (7th Cir. 1995) (internal quotation marks omitted). RICO is not just a conspiracy statute; the enterprise must have "a structure and goals separate from the predicate acts themselves." *Id.; see also Jennings v. Emry,* 910 F.2d 1434, 1441 (7th Cir. 1990) ("[W]hile the hallmark of conspiracy is agreement, the central element of an enterprise is structure."). An enterprise is shown "by evidence of an

ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Richmond,* 52 F.3d at 644.

In addition to the Rule 8/*Twombly* pleading threshold, any fraud-based allegations, such as allegations of fraud in Olson's RICO claims, must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Slaney v. Int'l Amateur Athletic Federation,* 244 F.3d 580, 597 (7th Cir. 2001); *Goren v. New Vision Int'l, Inc.,* 156 F.3d 721, 726 (7th Cir.1998) ("Rule 9(b) is of course applicable to allegations of fraud in a civil RICO complaint."). Thus, a plaintiff must, "with particularity," provide the time, place and content of the alleged false representations, how the representations were communicated, and the identities of the parties to those representations. Fed.R.Civ.P. 9((b); *Slaney,* 244 F.3d at 597.

Even considering Plaintiff's four RICO claims together, she fails to meet these pleading standards.  She offers only conclusory statements, such as:  "The Defendants, as an association in fact, agreed among themselves that some of them would commit a pattern of racketeering activity . . . in order to harm the Plaintiff, then took actions in furtherance of that objective." (Doc. 123, p. 9).  Olson further asserts the individual defendants "conspired among themselves and used the NCIC and State of Illinois Bureau of Identification for the purpose of retaliating against the Plaintiff, by sharing false criminal history information and false mental health history information, to prevent the Plaintiff from the enjoyment of employment . . . ." (Doc. 123, p. 10).

Count VIII, alleging just the fraud violation, does sketch out some of the required information, but not with the required specificity.  For example, with respect to the NCIC, it is alleged that, "the NCIC shared an identity document containing the criminal history of a

convicted drug trafficker[,] Cristi Olson (1958)[,] with the Plaintiff's 50+ potential employers to prevent Plaintiff from being employed." (Doc. 123, p. 12).

For these reasons, Plaintiff Olson's RICO claims, Counts III, V, VIII and XII, must be **DISMISSED**.

E.   Count X

Count X asserts that the FBI, NCIC and Illinois Bureau of Identification, as well as Watson, Wells, Hertz and Pappas, shared incorrect information about Plaintiff's criminal history, causing her to answer for infamous crimes in violation of her rights under the Fifth Amendment.

The Fifth Amendment to the United States Constitution states that no person shall be held to answer for an infamous crime without a presentment or indictment of a Grand Jury. To "answer for an infamous crime" means to do so in the courts of the United States. *Mackin v. United States*, 117 U.S. 348, 354 (1886).

In her complaint, Olson does not allege that she was held before a court of the United States to answer for the infamous crime of drug trafficking or other crimes.  Rather, Olson alleges that she was held to answer in the court of public opinion for the criminal history of others.  Therefore, Count X is **DISMISSED with prejudice**, as this claim cannot be cured.

F.   Illinois Constitutional Claims: Count XIII

Count XIII is captioned "Violation of the Illinois Constitution," but no specific legal allegation is contained in the claim, nor is there any suggestion of which constitutional provision(s) Olson thinks have been violated.  Rather, Olson broadly alleges that, "[b]y all allegations in this complaint," Defendants Hertz, Wells and Brave engaged in a conspiracy "to prevent Plaintiff from obtaining justice by law, freely, completely, and promptly by falsifying

11

facts in a report, then refusing to speak to the Plaintiff about the report."  (Doc. 123, p. 19).  Although the Illinois constitution contains many provisions mirroring the federal constitution, it is not the Court's, nor the defendants', job to guess what claim(s) are being asserted.  Moreover, the claims alleged throughout the complaint are too conclusory and/or implausible as pleaded to satisfy Rule 8 and *Twombly*, so they cannot serve as a basis for this claim.  Therefore, Count XIII is **DISMISSED**.

> G.  Nature of the Dismissal

In *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008), the Court of Appeals for the Seventh Circuit explained that "[d]istrict courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint." *See also Bausch v. Stryker Corp.*,  630 F.3d 546, 562 (7th Cir. 2010); Fed.R.Civ.P. 15(a).  Although denial of leave to amend and dismissal with prejudice in such situations is disfavored,

> [a] district court may deny leave to file an amended complaint in the case of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC,* 499 F.3d 663, 666 (7th Cir.2007), quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

*Bausch*, 630 F.3d at 562. *See also Emery v. American General Finance, Inc.,* 134 F.3d 1321, 1322–1323 (7th Cir. 1998).  For example, in *Agnew v. National Collegiate Athletic Association*, 683 F.3d 328, 347 (7th Cir. 2012), dismissal with prejudice was deemed appropriate after three attempts to amend the complaint had not produced an adequate complaint.

In this situation, Olson has filed five complaints (Docs. 1, 7, 20, 40, 123). Plaintiff moved to amend the complaint after Defendants moved to dismiss the Second Amended Complaint (Doc. 29), and she moved to amend after Defendants attacked the Third Amended Complaint (Docs. 43, 47, 51, 80). Each time, Olson had the benefit of Defendants' criticism to re-plead her claims. The Court has now concluded that none of the 12 claims asserted in the Fourth Amended Complaint is adequately pleaded. At this juncture, the prejudice to Defendants in having to repeatedly respond to a moving target cannot be denied. Therefore, dismissal of all twelve claims shall be with prejudice, meaning that Plaintiff will not be given a sixth opportunity to plead her claims.

### 3.  Conclusion

For the reasons stated, the motions to dismiss filed by Defendants Agent Pappas, Sheriff Hertz, Major Wells, Deputy Brave, Agent Watson, the Illinois Bureau of Identification, the FBI National Criminal Information Center, and the Federal Bureau of Investigation (Docs. 130, 134, 150) are **GRANTED**.   All claims against all defendants are **DISMISSED with prejudice**.  This case is closed and judgment shall enter accordingly.

**IT IS SO ORDERED.**

**DATED: January 25, 2013**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**